UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VYERA PHARMACEUTICALS, LLC, | ) |
|           Plaintiff, | ) Case No. |
| v. | ) |
| WALGREEN CO., | ) |
|           Defendant. | ) |

**COMPLAINT**

Plaintiff Vyera Pharmaceuticals, LLC ("Vyera") hereby sues Defendant Walgreen Co. ("Walgreens"), and states as follows:

**INTRODUCTION**

1. Vyera brings this action against Walgreens for breach of a Specialty Pharmacy Provider Distribution Agreement dated as of February 23, 2015, as amended as of December 9, 2015 and March 30, 2016 (the "Distribution Agreement").

2. Vyera manufactures and sells the drug Daraprim (known generically as pyrimethamine) in the United States. Daraprim is a prescription medication used to treat toxoplasmosis, a deadly parasitic infection that primarily affects individuals with weakened immune systems. Pursuant to the Distribution Agreement, Walgreens agreed to purchase Daraprim from Vyera and distribute it in the United States.

3. Section 3.4 of the Distribution Agreement governs the effect of any changes in the price of Daraprim. Pursuant to that section, in the event that Vyera at any time raises the price of Daraprim, Walgreens must pay Vyera a "Shelf Stock

Adjustment" equal to the difference between the original price of the drug and the new, increased price for all inventory of Daraprim that Walgreens has on hand at the time of the price increase.

4. On August 11, 2015, Vyera raised the price of Daraprim. At the time of that price increase, Walgreens had a substantial inventory of Daraprim on hand that it had purchased at the lower original price. On information and belief, Walgreens sold that inventory of Daraprim at a price significantly higher than the original price, for a substantial additional profit.

5. Under Section 3.4 of the Distribution Agreement, Walgreens was required to pay Vyera a Shelf Stock Adjustment corresponding to the amount of the August 11, 2015 price increase. Despite receiving multiple invoices and requests for payment from Vyera, Walgreens refuses to pay any of the Shelf Stock Adjustment it owes and has ignored Vyera's repeated requests for a complete accounting of the inventory of Daraprim that Walgreens had on hand as of August 11, 2015.

6. Walgreens' refusal to pay a Shelf Stock Adjustment to Vyera in accordance with Section 3.4 of the Distribution Agreement constitutes a breach of Walgreens' obligations under that Agreement. Vyera brings this lawsuit to enforce the Distribution Agreement and recover the full amount of the Shelf Stock Adjustment that Walgreens owes, together with interest as permitted by applicable law.

## THE PARTIES

### The Plaintiff

7. Plaintiff Vyera is, and was at all times relevant to this action, a Delaware limited liability company with its principal place of business in New York, New York.

8. Vyera's sole member is Phoenixus AG, a Swiss company with its principal place of business in Zug, Switzerland.

### The Defendant

9. Defendant Walgreens operates the second-largest pharmacy store chain in the United States and provides additional pharmaceutical and human health services, including a specialty pharmacy branch that distributes medications for complex, chronic and/or rare conditions.

10. Walgreens is, and was at all times relevant to this action, an Illinois corporation with its principal place of business in Deerfield, Illinois.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).

12. This Court has diversity jurisdiction over this action because (a) Vyera claims damages in excess of $75,000, exclusive of legal fees and costs; and (b) the citizenship of Vyera and Walgreens is diverse because Vyera is a citizen of Switzerland and Walgreens is a citizen of Illinois.

13. Defendant Walgreens is subject to the jurisdiction of this Court because (a) it is a resident of Illinois; and (b) pursuant to Section 14.3 of the Distribution Agreement,

Walgreens consented to this Court's jurisdiction in any action to enforce that Agreement.

14. Venue is proper in the Northern District of Illinois because (a) pursuant to 28 U.S.C. § 1391(b)(2), a substantial part of the events giving rise to Vyera's claims occurred in the Northern District of Illinois, where Walgreens resides; and (b) pursuant to Section 14.3 of the Distribution Agreement, Walgreens agreed that this Court is an appropriate venue for any action to enforce that Agreement.

## COUNT ONE:
## BREACH OF CONTRACT

15. As of February 23, 2015, Amedra Pharmaceuticals LLC ("Amedra")—which, at that time, owned U.S. marketing rights to Daraprim (the "Daraprim Rights")—entered into the Distribution Agreement with Walgreens, pursuant to which Amedra appointed Walgreens as the exclusive specialty pharmacy provider of Daraprim in the United States.

16. On or about March 9, 2015, Impax Laboratories, Inc. ("Impax") acquired Amedra and its products, including the Daraprim Rights.

17. On or about August 7, 2015, Phoenixus AG (then known as Turing Pharmaceuticals AG) acquired the Daraprim Rights from Impax. As part of that transaction, with Walgreens' consent, Amedra assigned the Distribution Agreement to Vyera (then known as Turing Pharmaceuticals, LLC).

4

**The Distribution Agreement**

18. The Distribution Agreement sets forth terms and conditions governing Walgreens' distribution of Daraprim in the United States. Pursuant to that Agreement, Walgreens agreed to purchase Daraprim at the drug's "Wholesale Acquisition Cost" or "WAC" and distribute it through Walgreens' specialty pharmacy business. (Distribution Agreement § 3.2 & Ex. A thereto.) The Distribution Agreement defines "wholesale acquisition cost" as the "list price for [Daraprim] for wholesalers, distributors, specialty pharmacy providers and other direct accounts before any rebates, discounts, allowances or other price concessions." (*Id*. § 1.27.) Vyera agreed to ship any product Walgreens purchased to one of four central fulfillment sites, which could then either dispense the drug directly to patients or transfer it to one of several "dispensing only" fulfillment sites for dispensing to patients. (*Id*. § 3.2.1 & Ex. B thereto.)

19. Section 3.4 of the Distribution Agreement, titled "Shelf Stock Adjustment," governs the effect of any changes to the WAC of Daraprim. That section provides, in relevant part:

> In the instance where the current WAC of Product . . . has decreased, [Vyera] will immediately provide notice to Walgreens of the price decrease, and on the effective date of the price increase, . . . [Vyera] agrees to issue a check to Walgreens for the amount of the shelf stock adjustment amount [sic] within 30 days of the date of the request for payment by Walgreens. The shelf stock adjustment will be calculated by multiplying the price decrease amount (previous WAC price less the current WAC price) by the inventory on hand. "Inventory-on-hand" is defined as [Daraprim] within or en route to Walgreens as of the effective date of the change to the WAC of [Daraprim]. Inventory-on-hand numbers shall be provided by Walgreens via a report

> within 45 days of official price decrease notice. Further, in the instance where the current WAC of [Daraprim] . . . increases, and on the effective date of the price increase, Walgreens shall pay to [Vyera] the difference between the previous WAC price and the current WAC price with the price increase for all inventory-on-hand as of the effective date of the WAC increase (the "WAC Increase"). Walgreens shall pay the amount of the WAC Increase by check to [Vyera] within 30-days of the date of request for payment by Manufacturer.

20. Thus, in the event of a decrease in the WAC of Daraprim, Vyera would be required to pay to Walgreens an amount equal to the difference between the original WAC and the decreased WAC for all Daraprim inventory-on-hand at Walgreens as of the effective date of the price decrease. Likewise, in the event of an increase in the WAC of Daraprim, the Distribution Agreement requires Walgreens to pay to Vyera, within 30 days of Vyera's request for payment, the difference between the original WAC and the increased WAC for all Daraprim inventory-on-hand as of the date of the price increase.

**Vyera's Requests for Payment of the Shelf Stock Adjustment**

21. On August 11, 2015, Vyera increased the WAC of Daraprim from $17.63 per pill to $750.00 per pill. On the same day, in accordance with Section 3.4 of the Distribution Agreement, Vyera provided notice of that price increase to Walgreens.

22. In the United States, all pharmaceutical drugs are labeled with a National Drug Code or "NDC" that identifies the drug, its manufacturer, and its package size. At that time of the price increase, Daraprim was sold under two National Drug Codes: 52024-0330-95 ("NDC-95 Daraprim") and 52054-0330-10 ("NDC-10 Daraprim"). The

6

August 11, 2015 price increase affected the WAC for both NDC-95 Daraprim and NDC-10 Daraprim.

23. On November 17, 2016, Vyera wrote to Walgreens to request an accounting of Walgreens' Daraprim inventory-on-hand as of August 11, 2015 so that Vyera could calculate the amount of the Shelf Stock Adjustment that Walgreens owed and issue an invoice to Walgreens for that amount. Walgreens did not provide the requested data.

24. On February 3, 2017, Vyera followed up in writing to reiterate its request for Walgreens' Daraprim inventory-on-hand as of August 11, 2015. Walgreens still did not provide the requested data.

25. On November 28, 2017, Vyera again wrote to Walgreens to request Daraprim inventory-on-hand data as of August 11, 2015. On November 30, 2017—more than one year after Vyera's first request for information—Walgreens provided only a partial accounting of its inventory data for Daraprim. The data that Walgreens provided showed its inventory of Daraprim on hand as of August 11, 2015, but only for Walgreens' four central fulfillment sites, not for any of its "dispensing only" fulfillment sites or any additional Walgreens sites that may have been holding Daraprim inventory. According to the limited data that Walgreens provided, as of August 11, 2015, Walgreens had an inventory of 6,146 pills of NDC-95 Daraprim at its four central fulfillment sites and no inventory of NDC-10 Daraprim at those sites. Vyera followed up with Walgreens to request Daraprim inventory-on-hand data for all fulfillment sites. Walgreens did not provide that data.

7

26. On December 5, 2017, based on the partial inventory report that Walgreens provided, Vyera invoiced Walgreens for a Shelf Stock Adjustment of $4,501,945 for NDC-95 Daraprim. Walgreens did not pay any portion of that invoice.

27. On December 18, 2018, Vyera followed up on its request for payment of the Shelf Stock Adjustment and submitted an updated invoice for NDC-95 Daraprim that included interest for Walgreens' non-payment. At the same time, Vyera also repeated its request for complete inventory-on-hand data as of August 11, 2015 for NDC-10 Daraprim. Walgreens did not provide the requested data or pay any portion of the updated invoice.

28. On February 21, 2019, during a phone call with Walgreens employees Frank Ferraro and Darin Osmond, Vyera reiterated its request—at this point outstanding for nearly two-and-a-half years—for complete Daraprim inventory-on-hand data as of August 11, 2015 necessary to calculate the full amount of the Shelf Stock Adjustment that Walgreens owes. Walgreens did not provide the requested data.

29. Vyera followed up on its request through emails from its General Counsel dated April 8 and April 22, 2019. Walgreens did not respond to those emails.

30. On May 31, 2019, Vyera received a letter from Robert M. Andalman, Walgreens' outside counsel. That letter purported to respond to Vyera's requests for inventory-on-hand data for Daraprim, declining to provide that data or pay any amount towards the Shelf Stock Adjustment that Walgreens owes under the Distribution Agreement.

31. On June 12, 2019, pursuant to Section 14.4 of the Distribution Agreement, Vyera sent a formal Notice of Dispute to Walgreens and Mr. Andalman in connection with Walgreens' refusal to pay the Shelf Stock Adjustment. Section 14.4 of the Distribution Agreement requires the parties to attempt to settle any dispute arising under that Agreement within 30 business days from receipt of notice of a dispute. In accordance with that section, Vyera indicated in its June 12, 2019 letter that it was prepared to discuss informal settlement of the parties' dispute. To facilitate such settlement, Vyera requested that Walgreens provide information regarding the total amount that Walgreens received from the sale of the inventory of Daraprim that it had on hand as of the August 11, 2015 price increase. Walgreens did not respond to Vyera's letter.

32. The 30-business-day period for negotiation toward informal settlement of the parties' dispute expired on July 25, 2019. Walgreens did not engage in any effort to informally resolve the parties' dispute.

33. On July 16, 2019, Vyera sent two invoices to Walgreens for Shelf Stock Adjustments for NDC-95 Daraprim and NDC-10 Daraprim. In the absence of complete data from Walgreens, those invoices relied on partial data that Walgreens previously provided and on Vyera's good-faith estimates of Walgreens' inventory-on-hand of Daraprim as of August 11, 2015. The invoice for NDC-95 Daraprim continued to use the partial inventory figure that Walgreens provided on November 30, 2017 to arrive at a Shelf Stock Adjustment of $4,501,945. The invoice for NDC-10 Daraprim calculated a Shelf Stock Adjustment of $24,064,822.50, using Vyera's estimate of Walgreens' NDC-10

9

Daraprim inventory-on-hand based on data from the Centers for Medicare & Medicaid Services concerning dispenses of NDC-10 Daraprim during the relevant timeframe. Both invoices included interest for non-payment, calculated from December 18, 2016 — *i.e.*, 31 days after Vyera first requested the inventory-on-hand data necessary to invoice Walgreens for the Shelf Stock Adjustment — through July 11, 2019. Pursuant to that calculation, the interest amounts due from Walgreens were $1,180,533 for NDC-95 Daraprim and $6,310,481 for NDC-10 Daraprim, and interest continues to accrue.

34. To date, Walgreens has not paid any part of the Shelf Stock Adjustment it owes to Vyera.

35. Walgreens' failure to pay the Shelf Stock Adjustment constitutes a breach of its obligations under Section 3.4 of the Distribution Agreement. The Distribution Agreement is a valid and enforceable contract. While Vyera has performed under that contract and satisfied all applicable conditions precedent to payment of the Shelf Stock Adjustment, Walgreens refuses to comply with its contractual obligation to pay a Shelf Stock Adjustment to Vyera in connection with the August 11, 2015 increase of the WAC of Daraprim.

36. As a direct and proximate result of Walgreens' breach of Section 3.4 of the Distribution Agreement, Vyera has sustained damages in the amount of $732.37 for each pill of Daraprim that Walgreens had in its inventory-on-hand as of August 11, 2015, together with interest for non-payment as permitted by applicable law. Based on the information currently available to it, Vyera believes that its damages will exceed $35 million.

WHEREFORE, Vyera respectfully prays that judgment be entered in its favor and against Walgreens, awarding Vyera:

A.    Compensatory damages in an amount to be proven at trial, corresponding to $732.37 for each pill of Daraprim that Walgreens had in its inventory-on-hand as of August 11, 2015;

B.    Prejudgment interest at the highest rate permitted by applicable law, in an amount to be proven at trial;

C.    Costs and expenses; and

D.    Such other, further and additional legal or equitable relief to which Vyera may be entitled, including but not limited to post-judgment interest at the highest rate permitted by applicable law.

Dated: August 22, 2019

By: /s/ Drew G.A. Peel

Drew G.A. Peel (ARDC# 6209713)
Kevin B. Duff (ARDC# 6210491)
Nicole Mirjanich (ARDC# 6321139)
RACHLIS DUFF PEEL & KAPLAN, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Tel: (312) 275-0337
Fax: (312) 733-3952
dpeel@rdaplaw.net
kduff@rdaplaw.net
nmirjanich@rdaplaw.net

Daniel H. Weiner (application for *pro hac vice* admission to be filed)
Fara Tabatabai (application for *pro hac vice* admission to be filed)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
Tel: (212) 837-6000
Fax: (212) 422-4726
daniel.weiner@hugheshubbard.com
fara.tabatabai@hugheshubbard.com

*Attorneys for Plaintiff Vyera Pharmaceuticals, LLC*