**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Vyera Pharmaceuticals, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19-CV-05652 |
| | ) | |
| v. | ) | Hon. Marvin E. Aspen |
| | ) | |
| Walgreen Co., | ) | Magistrate Judge Young B. Kim |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

Vyera Pharmaceuticals, LLC ("Vyera") used to be called Turing Pharmaceuticals, LLC and its CEO was Martin Shkreli. Turing and Shkreli became household names in August of 2015, when Turing acquired the rights to sell a drug called Daraprim and then immediately increased the cost of that medication 4,154%, from $17.63 to $750.00 per pill. The increase was so large that Shkreli was called to Congress to answer for it. He refused to testify, invoking the Fifth Amendment because he feared prosecution for the price increase (Shkreli was prosecuted for different crimes and is serving a 7-year prison sentence).

Vyera now sues Walgreen Co. ("Walgreens") seeking a $35 million windfall in a late attempt to charge Walgreens for Shkreli's 4,154% price increase for Daraprim that Walgreens had in inventory on August 11, 2015. The complaint relies on a "Shelf Stock Adjustment" term in the parties' agreement that gave Vyera discretion to make changes in the wholesale acquisition cost of Daraprim, in which case Walgreens would pay the difference in cost for inventory on hand. Vyera (then Turing) was required to exercise its discretion to make changes in cost in good faith and in a commercially reasonable manner, consistent with the parties' expectations. It did not do so, however, and pleads no facts to the contrary. Rather, the facts Vyera does plead demonstrate that it violated its contractual covenant of good faith and fair dealing.

While Vyera's reliance on the facially outrageous Shkreli price increase fatally dooms its complaint, the complaint fails for other reasons, too. Vyera's allegations demonstrate that it failed to follow the contractual notice requirements when it imposed the Shkreli price increase. Moreover, the parties' agreement concerned only one of the two Daraprim products on which Vyera now sues.

For all these reasons, Vyera does not and cannot state a claim in this case and its complaint is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## FACTUAL ALLEGATIONS

As noted, this case involves the medication Daraprim (known generically as pyrimethamine). Compl. ¶ 2. Daraprim is used to treat toxoplasmosis, a deadly parasitic infection that primarily affects individuals with weakened immune systems. *Id.*

**The Distribution Agreement**

On February 23, 2015, Walgreens entered into a contract (the "Distribution Agreement") with Amedra Pharmaceuticals LLC ("Amedra"). Through corporate acquisitions, assignments and name changes, as described below, this is the contract on which the one-count complaint is based. Vyera did not attach the Distribution Agreement to the complaint, though it refers to it throughout. *Id.* ¶¶ 1-3, 5-6. The Distribution Agreement is attached hereto as Exhibit 1.

Under the Distribution Agreement, Amedra, which was the manufacturer of the drug Daraprim, agreed to sell that prescription drug to Walgreens, and Walgreens would then distribute the medication to its customers from specified "specialty" pharmacies rather than from Walgreens' retail pharmacies. *See id.* ¶ 9; *see also* Distribution Agreement, Exhibit 1.

On August 7, 2015, following a series of deals, and within six months of Walgreens entering into the Distribution Agreement with Amedra, Turing Pharmaceuticals, LLC ("Turing")

acquired Amedra's U.S. distribution rights under the Distribution Agreement. Compl. ¶ 17. Turing subsequently changed its name to Vyera. *Id.*

The Distribution Agreement "appoints Walgreens (and all of its Fulfillment Sites) as the exclusive specialty pharmacy dispensing entity for the **Product** within the Territory." Distribution Agreement, § 2.1, Exhibit 1 (emphasis added). "Product" is defined as "those pharmaceutical products listed in Exhibit A…and may be changed from time to time upon the mutual written agreement of the Parties." *Id.* § 1.20. Exhibit A to the Distribution Agreement provides:

## Exhibit A
### PRODUCT AND PRICING

| Product | NDC | Strength | WAC |
|---|---|---|---|
| Daraprim (pyrimethamine) | 52054-330-10 | 25mg | $TBD |

As described in the complaint, the NDC code "identifies the drug, its manufacturer, and its package size." Compl. ¶ 22. The Distribution Agreement makes no reference to NDC code 52024-0330-95, which the complaint calls "NDC-95 Daraprim." *Id.* The Product covered by the Distribution Agreement is defined to include only what Vyera refers to in the complaint as "NDC-10 Daraprim." *See id.*

The Distribution Agreement provides the distributing party discretion to change the price of the drug, providing: "PRICE CHANGES. Manufacturer in its sole discretion will determine the effective date and time of any change in WAC." Distribution Agreement, § 3.3, Exhibit 1. "WAC" is elsewhere defined as "Wholesale Acquisition Cost" meaning "Manufacturer's list

price for Product for wholesalers, distributors, specialty pharmacy providers and other direct accounts before any rebates, discounts, allowances or other price concessions." *Id.* § 1.27. However, for a WAC price change to be valid, the manufacturer must "provide Walgreens with at least 24 hours written notice prior to a change in WAC to the following email address: supplychainwsp@walgreens.com." *Id.* § 3.3. Walgreens only agreed to pay invoices "where such complete notification was provided." *Id.*

The Distribution Agreement also provides what should happen with the inventory of NDC-10 Daraprim that Walgreens already had when there is a price change, calling this a "Shelf Stock Adjustment." *Id.* § 3.4. The Distribution Agreement provides that "in the instance where the current WAC of Product…increases, Manufacturer will provide notice of the price increase, and on the effective date of the price increase, Walgreens shall pay to Manufacturer the difference between the previous WAC price and the current WAC price with the price increase for all inventory-on-hand as of the effective date of the WAC increase (the 'WAC Increase')." *Id.* However, no payment is required until a "request for payment by Manufacturer" is made. *Id.*

The Distribution Agreement also provides that "no change, modification, extension, termination or waiver of this Agreement, or any of the provisions herein, will be valid unless made in writing and signed by duly authorized representatives of the Parties." *Id.* § 14.6. Illinois law governs the Distribution Agreement "without regard to principles of conflict of laws." *Id.* § 14.3.

### Vyera Acquires the Manufacturer Rights Under the Distribution Agreement and Immediately Increases the Price of the Medication by over 4100%

As already discussed, Turing, now known as Vyera, acquired Amedra's rights under the Distribution Agreement on or about Friday, August 7, 2015. Compl. ¶ 17. The following Tuesday, on August 11, 2015, Vyera increased the price of Daraprim from $17.63 per pill to

$750.00 per pill. *Id.* ¶ 21. This is a price increase of 4,154%. Vyera alleges no business reason for this price increase and certainly does not allege that this dramatic price increase was as a result of any change in market conditions. Notice of the price increase was not provided "at least 24 hours" before the increase, but on the same day. *Id.*

Following the increase, and for the next 15 months, Vyera did not take any action to seek payment from Walgreens based on the Shelf Stock Adjustment. It was only on November 17, 2016 that Vyera first sought an accounting of Walgreens' Daraprim inventory-on-hand as of August 11, 2015. *Id.* ¶ 23. Vyera alleges that Walgreens did not provide complete information in response to that request. *Id.* ¶ 25. On December 5, 2017, Vyera invoiced Walgreens $4,501,945 for NDC-95 Daraprim based on application of the Shkreli price increase. *Id.* ¶ 26. Vyera sought payment of an additional $24,064,822.50 for NDC-10 Daraprim on July 16, 2019, over a year and a half after its initial invoice was sent. *Id.* ¶ 33. Vyera alleges it is due at least $6,310,481 for interest on this second invoice, beginning its interest calculation on December 18, 2016, though Vyera did not send the invoice until almost three years later and the contract does not provide for interest to be paid to Vyera. *Id.*

On August 22, 2019, Vyera filed its claim here, seeking an unjustified $35 million windfall from the outrageous Shkreli price increase. *Id.* ¶ 36.

## ARGUMENT

After Shkreli invoked his Fifth Amendment rights and refused to testify or produce documents before Congress about the price increase on which Vyera now relies, the ranking member of the Committee on Oversight and Government Reform used the Shkreli price increase as an example of "obscene price increases" and called out "Martin Shkreli, who increased the price of a drug [Daraprim] that treats life-threatening infections from about $14 to $750

overnight." 161 Cong. Rec. H7304 (daily ed. Oct. 28, 2015) (statement of Rep. Cummings). When Walgreens gave Amedra – Vyera's predecessor – discretion to adjust WAC pricing subject to the Shelf Stock Adjustment, neither Walgreens nor Amedra could have foreseen such "obscene" increases. There can be no dispute that this was unforeseeable and not commercially reasonable, such that Vyera breached its contract when it made this increase and then attempted years later to apply the "Shelf Stock Adjustment" to it. Moreover, Vyera further breached the Distribution Agreement's notice provision and it sues on products not covered in any event by the parties' agreement. As noted, for all of these reasons, Vyera does not and cannot state a plausible breach of contract claim against Walgreens.

## I.     Federal Pleading Rules Require a Plausible Cause of Action Based Upon the Terms of the Parties' Written Contract

To survive a Rule 12(b)(6) motion, a plaintiff must set forth sufficient factual matter to provide a plausible ground for relief. This means more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

Critically important in this case, in deciding a motion to dismiss, "[t]he court must also consider 'documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice ….'" *LifeWorks Tech. Grp. LLC v. Walgreen Co.*, 295 F. Supp. 3d 884, 885 (N.D. Ill. 2018) (Feinerman, J.) (citation omitted) (dismissing counts of complaint inconsistent with the terms of a similar Walgreens'

GTA). In deciding a motion to dismiss, "[a] court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (affirming dismissal based on affirmative defense demonstrated by public record facts). This appropriately includes recorded testimony and reports of public hearings, *see N. Miami Beach Gen. Emples. Ret. Fund v. Parkinson*, No. 10 C 6514, 2012 U.S. Dist. LEXIS 133575, at *9 n.4 (N.D. Ill. Sep. 19, 2012) (dismissing complaint and taking notice of reports and recordings of testimony before FDA), *rev'd on other grounds sub nom. Westmoreland Cty. Emple. Ret. Sys. v. Parkinson*, 727 F.3d 719 (7th Cir. 2013), or matters reported in the Congressional Record, *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1087 (N.D. Cal. 2017) (taking notice of Congressional Record and observing "courts regularly take judicial notice of congressional records"). *See also In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 504 (S.D.N.Y. 2009) (taking notice of evidence of testimony before Congress on motion to dismiss).

## II. Vyera Cannot State a Claim Based on the Shkreli Price Increase

Vyera's case depends entirely on a *post hoc* attempt to apply the Shelf Stock Adjustment to the outrageous Shkreli price increase. However, that price increase itself violated the covenant of good faith and fair dealing that was part and parcel of the Distribution Agreement. This defeats Vyera's claims for one of two reasons. Either: (1) the complaint fails because Vyera has not and cannot allege that it complied with its own obligations pursuant to the Distribution Agreement, as required to state a claim; or (2) the pleaded facts demonstrate Vyera's breach of the covenant of good faith and fair dealing so plainly that, as a matter of law, Vyera's claims are affirmatively defeated. In either case, this defect is not one that can be cured by repleading.

**A.    Vyera Did Not and Cannot Allege that it Performed Consistent with the Distribution Agreement**

Under Illinois law, the elements of a breach of contract cause of action are (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages. *Bogie v. PAWS Chi.*, 914 F. Supp. 2d 913, 916 (N.D. Ill. 2012).[1] Thus, to adequately plead a claim for breach of contract, Vyera must plead that it performed all required conditions under the Distribution Agreement. *Id.* Vyera has not done so.

Instead, Vyera pleads only the conclusion that it "has performed under that contract and satisfied all applicable conditions precedent to payment of the Shelf Stock Adjustment." Compl. ¶ 35. No facts are alleged that support this bald claim, which in and of itself is a fatal defect to the complaint. *Darne v. Ford Motor Co.*, No. 13 CV 03594, 2017 U.S. Dist. LEXIS 142425, at *24-26 (N.D. Ill. Sep. 1, 2017) (dismissing claim for breach of express warranty because statement that plaintiff "properly maintained all of its vehicles" was insufficient; holding plaintiff must plead "facts supporting a plausible inference that it met the requirements necessary to trigger Ford's obligation under the warranty to repair the vehicle"); *see also Artistic Framing, Inc. v. Hosp. Res., Inc.*, No. 12-cv-6997, 2013 U.S. Dist. LEXIS 11118, at *8-9 (N.D. Ill. Jan. 24, 2013) (granting motion to dismiss where conclusory allegation that plaintiff performed "insufficient to allege that AFI performed all required conditions under the contract").

Nor is it possible for Vyera to plead that it complied with all material conditions of the Distribution Agreement. In Illinois, "a covenant of good faith and fair dealing is implied in every contract." *Oil Express Nat'l v. Burgstone*, 958 F. Supp. 366, 369 (N.D. Ill. 1997); *see also* 810

---

[1]    The Distribution Agreement specifically provides for application of Illinois law. Distribution Agreement, § 14.3, Exhibit 1.

ILCS 5/1-304 ("Obligation of good faith. Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement."). The consequence of the covenant of good faith and fair dealing is that "a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *BA Mortg. & Int'l Realty Corp. v. Am. Nat'l Bank & Tr. Co.*, 706 F. Supp. 1364, 1373 (N.D. Ill. 1989). "Where contractual discretion is exercised in bad faith, the contract is breached." *Foster Enters. Inc. v. Germania Fed. Sav. and Loan Assoc.*, 421 N.E.2d 1375, 1381 (Ill. App. Ct. 1981).

Thus, while the Distribution Agreement provides Vyera with discretion to increase the cost of the product, which increase will then be subject to the Shelf Stock Adjustment, that discretion is not unlimited. Rather, it is to be exercised reasonably, in good faith and consistent with the expectations of the parties when the contract was agreed upon. The 4,154% Shkreli price increase satisfies none of these criteria and the complaint includes no allegations that remotely support any plausible explanation that it could.

Indeed, there was no valid market reason for this increase, which is why Shkreli himself invoked his Fifth Amendment right against self-incrimination rather than answer questions or produce documents about it. *See* 162 Cong. Rec. S116-18 (daily ed. Jan. 20, 2016) (invocation of Fifth Amendment by Vyera's then-CEO). Shkreli's testimony, again as Vyera's CEO, was widely reported and can be viewed today on C-Span, all of which is in the public record. *E.g.* *Martin Shkreli blasts 'imbecile' lawmakers after taking Fifth*, CNN BUSINESS (Feb. 5, 2016, 9:11 AM), https://money.cnn.com/2016/02/04/news/companies/martin-shkreli-hearing/; *see also* *Shkreli Testimony*, C-SPAN (Feb. 7, 2016), https://www.c-span.org/video/?c4579622/shkreli-

testimony. In this civil matter, Walgreens is entitled to an adverse inference that Shkreli's

testimony about the price increase, on behalf of Vyera, would have opened himself, and thereby

Vyera, to criminal liability. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831

F.3d 815, 835 (7th Cir. 2016) ("The Fifth Amendment allows adverse inference instructions

against parties in civil actions."); *Evans v. City of Chi.*, 513 F.3d 735, 743 (7th Cir. 2008) ("To

be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give

if one did answer it (and answer it truthfully) must have some tendency to subject the person

being asked the question to criminal liability.").

This magnitude of a 4,154% price increase simply cannot be squared with the

expectations of Walgreens and Vyera's predecessor in interest, Amedra, when they entered the

Distribution Agreement. Accordingly, Vyera's unreasonable and arbitrary price increase is a

breach of the covenant of good faith and fair dealing, which is why Vyera has not and could not

allege its own performance under the agreement. *See Edwards v. N. Am. Power & Gas, LLC*, 120

F. Supp. 3d 132, 147 (D. Conn. 2015) (complaint pleading parties agreed to variable pricing

based on market fluctuations but that prices in fact arbitrarily increased to create a "pure profit

center" demonstrated breach of covenant of good faith and fair dealing); *Berkeley v. Wells Fargo

Bank*, No. 15-cv-00749-JSC, 2015 U.S. Dist. LEXIS 141947, at *13-20 (N.D. Cal. Oct. 19,

2015) (holding plaintiff fails to adequately allege performance where it simply reiterates the

conclusion that it "substantially performed," particularly where pleaded facts suggest otherwise).

### B.   Vyera's Violation of the Covenant of Good Faith and Fair Dealing Affirmatively Defeats its Claims

While Vyera failed, as required, to plead its own performance under the Distribution

Agreement, including compliance with the covenant of good faith and fair dealing, the facts that

Vyera has pleaded (as noted) themselves plainly demonstrate breach of the covenant. This provides an alternative basis to dismiss.

Specifically, the covenant of good faith and fair dealing is sometimes pleaded as an affirmative defense. *E.g. Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, No. 07-cv-1394, 2009 U.S. Dist. LEXIS 41120, at *20-21 (N.D. Ill. May 13, 2009) (upholding as affirmative defense where plaintiff "improperly exercised its discretion" pursuant to a contract) (citing cases). And, when an affirmative defense is clearly established by the facts the plaintiff itself pleads, application of the defense to support dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate. *Davis v. Wells Fargo Bank*, No. 07 C 2881, 2008 U.S. Dist. LEXIS 31636, at *9 (N.D. Ill. Apr. 17, 2008) (Aspen, J.) (dismissing complaint, in part, based on affirmative defense and observing this is done "'when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense'"), citing *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) and *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("[W]hen the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit.").

Here, by pleading that it acquired the right to distribute Daraprim on Friday, August 7, 2015, Compl. ¶ 17, and then increased the price of the life-saving drug 4,154% the following Tuesday, August 11, 2015, *id.* ¶ 21, Vyera has pleaded the facts that incontrovertibly demonstrate its conduct was not in good faith, was inconsistent with fair dealing and inconsistent with the reasonable expectations of the parties to the Distribution Agreement. That this is the case, and indeed so much so that it is plain from the face of the complaint that Vyera's case can be regarded as frivolous, is further demonstrated by the fact that, when called upon to explain its

conduct, Vyera's then-CEO invoked his Fifth Amendment right against self-incrimination for criminal prosecution.

On this basis, too, Vyera's complaint is properly dismissed.

### III. The Complaint Fails to Allege Compliance with the Contractual Notice Period

Further demonstrating why the complaint fails to state a claim, Vyera's own allegations demonstrate that when it imposed the Shkreli price increase, Vyera did not comport with the contractual notice period for any such increase. Thus, the contract provided that Vyera give "at least 24 hours written notice" before any increase in price. Distribution Agreement, § 3.3, Exhibit 1. However, according to the complaint, Vyera gave no such notice – instead informing Walgreens of the increase "[o]n the same day" it was imposed. Compl. ¶ 21. This deviation matters.

"[W]hen parties agree to and insert language into a contract, the presumption is that it was done purposefully and the language employed is to be given effect." *Fid. Nat'l Title Ins. Co. v. Westhaven Props. P'ship*, 898 N.E.2d 1051, 1064 (Ill. App. Ct. 2007). Specific to this case, notice requirements like the one at issue here are material and should not be ignored. *Thakral v. Mattran*, 509 N.E.2d 772, 775 (Ill. App. Ct. 1987) (affirming judgment for defendants where contract required written notice within specific time, but where only oral notice was provided by that time, and written notice was provided one day late; plaintiff had failed to comply with notice requirements and appropriately lost earnest money); *see also Oxford Commer. Funding v. Cargill, Inc.*, No. 00 C 4996, 2002 U.S. Dist. LEXIS 21254, at *17-19 (N.D. Ill. Oct. 28, 2002) ("cases interpreting contractual notice provisions have strictly construed these provisions to require exact compliance"). Vyera's failure to comply with the notice requirement here when it

imposed the Shkreli price increase – as the complaint admits – is yet another reason it cannot plead its own contractual performance as a matter of law.

## IV. Vyera Improperly Seeks Damages for Product not Included in the Distribution Agreement

Not only has Vyera failed to state a claim, but the claim it purports to state is overbroad. Thus, Vyera seeks to apply the Shelf Stock Adjustment to inventory of both NDC-10 and NDC-95 Daraprim, whereas the Distribution Agreement by its terms applies only to NDC-10. Exhibit A to Distribution Agreement, Exhibit 1. Neither is there any allegation that this was later modified. *See* Distribution Agreement, § 14.6 (requiring written modifications signed by both parties). Contracts are interpreted based on the plain meaning of the terms used, and the parties' intent is discerned solely from those terms absent any ambiguity. *Lansing v. Carroll*, 868 F. Supp. 2d 753, 763 (N.D. Ill. 2012). And, where any portion of a claim is not properly pled, that portion of the claim should be dismissed. *Id.* Here, where the Distribution Agreement applies only to NDC-10 Daraprim and no written modification was ever made changing that, even had Vyera otherwise stated a claim, its claims with regard to NDC-95 Daraprim would be properly dismissed. *Nicor Energy v. Dillon*, No. 03 C 1169, 2003 U.S. Dist. LEXIS 13179, at *6-7 (N.D. Ill. July 23, 2003) (motion to dismiss portions of counts granted where relevant agreement provided no basis for claims).

## <u>CONCLUSION</u>

It is not just implausible, it is absurd to suggest that when Amedra and Walgreens agreed to provide discretion to Amedra to make cost adjustments based on changes in market conditions that either party foresaw what one Congressman called the "obscene" Shkreli price increase of 4,154%. On its face, and as described in the complaint, that increase was not in good faith, not commercially reasonable and defies any expectation. Vyera has not pleaded facts to suggest

otherwise and could not do so. Moreover, Vyera's own pleaded facts demonstrate that it failed to

abide by the covenant of good faith and fair dealing or the contractual notice requirement.

Further, Vyera sues on products not even subject to the Distribution Agreement. For any and all

of these reasons, Vyera's complaint is properly dismissed – and dismissed with prejudice.

Dated:  October 17, 2019                            **WALGREEN CO.**


                                                    /s/ Robert M. Andalman                    
                                                    One of Its Attorneys



Robert M. Andalman (ARDC No. 6209454)
Rachael Blackburn (ARDC No. 6277142)
Kristin Opal (ARDC No. 6327394)
A&G Law LLC
542 South Dearborn, 10th Floor
Chicago, IL  60605
Telephone: (312) 348-7629
Facsimile: (312) 279-4529

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, hereby certifies that on this 17th day of October, 2019, a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was served on all parties of record by the Court's EF/ECM system.


  /s/ Robert M. Andalman                

# Exhibit 1

# Filed Under Seal